IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AARON SLOAN,                         :
                                     :
        Plaintiff                    :
                                     :        CIVIL NO. 3:CV-12-1954
    v.                               :
                                     :        (Judge Caputo)
CHRISTOPHER CHAMBERS, *et al.*,      :
                                     :
        Defendants                   :

# M E M O R A N D U M

## I.    Introduction

Pro se plaintiff, Aaron Sloan, brings this action pursuant to 42 U.S.C. § 1983 against prison officials at his former institution, the State Correctional Institution at Camp Hill (SCI-Camp Hill), Pennsylvania.[1]   He claims that while housed in SCI-Camp Hill's Special Management Unit (SMU), prison officials allegedly violated his constitutional rights when they: denied his request to store extra legal materials in his cell; destroyed his eye glasses; denied him a religious meal; issued him a retaliatory misconduct; made an "attempt on his life"; denied him access to his stored legal materials; lost draft lawsuits sent for photocopying; improperly placed him on a "bean filled" food loaf diet knowing he is allergic to beans; confiscated his property and clothes when he elected to go on a hunger strike; denied him reasonable opportunities to shave; verbally threatened him; exposed him to constant illumination in his SMU cell; and denied him access to mental health therapy.  (Doc. 1, Compl.)

---

[1]  Mr. Sloan is currently housed at SCI-Greene in Waynesburg, Pennsylvania.

Defendants[2] seek summary judgment on all claims.  For the reasons set forth herein,

Defendants' motion for summary judgment shall be granted in part and denied in part.

## II.    Standard of Review

Federal Rule of Civil Procedure 56 sets forth the standards and procedures for granting

a motion for summary judgment.  Summary judgment is proper where "the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  The court must determine "whether the pleadings,

depositions, answers to interrogatories, admissions on file, and affidavits show that there is

no genuine issue of material fact and whether the moving party is therefore entitled to

judgment as a matter of law."  *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir.

2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d

265 (1986)).  "[T]he mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247 - 48, 106 S.Ct. 2505, 2509 - 10, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if

supported by evidence such that a reasonable jury could return a verdict in the non-moving

party's favor.  *Id*. at 248, 106 S.Ct. at 2510.  A material fact is any fact that might affect the

outcome of a suit under the governing substantive law.  *Gonzalez v. Sec'y of Dept. of*

---

[2] Named as defendants are the following individuals who worked at SCI-Camp Hill at all times relevant to this action: Corrections Officer (CO) Goss, CO Evans, CO Duncan, CO Shellenberger; CO Ellenberger; Lieutenant (Lt.) Flowers; Lt. Flinn; Unit Manager (UM) Chris Chambers; UM Rodney Carberry; Psych Kalsky; and Superintendent Murray.  Mr. Sloan also names the Pennsylvania Department of Corrections (DOC) Bureau of Healthcare Services as a defendant.

*Homeland Sec.,* 678 F.3d 254, 261 (3d Cir. 2012).   In reviewing a motion for summary judgment, the court must view all facts and draw all reasonable inferences "in the light most favorable to the party opposing the motion." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)(internal quotation marks omitted).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Santini v. Fuentes*, 795 F.3d 410 (3d Cir. 2015) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2553).   If this burden is met, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation and internal quotation marks omitted). Rather, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001)(citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### III.    Statement of Material Facts

The following facts are undisputed or, where disputed, reflect Mr. Sloan's version of the facts, pursuant to this Court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2510.

### A.    DOC's Inmate Grievance System

The Pennsylvania Department of Corrections' (DOC) Administrative Directive DC-ADM 804 (DC-ADM 804) is also known as the Inmate Grievance System.  It provides inmates with a multi-step administrative grievance appeal process to raise and resolve issues arising during the course of their incarceration.  (Doc. 30, Defs.' Statement of Material Facts (DSMF), ¶ 1.) Pursuant to DC-ADM 804, inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the events upon which the grievance occurred.  (DSMF ¶ 2.) If unsatisfied with the initial response to his or her grievance, the inmate may appeal the decision to the Facility Manager (Superintendent).  (DSMF ¶ 3.)  An inmate may then appeal the Facility Manager's decision to final review by the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  (DSMF ¶ 4.)

_____

[3]  In support of their summary judgment motion, Defendants submitted a statement of material facts.  (Doc. 30.)  Because Mr. Sloan failed to properly oppose Defendants' statement of material facts as required by Middle District Local Rule 56.1, facts submitted by Defendants are deemed admitted. Although Mr. Sloan claims his opposition to Defendants' motion for summary judgment is "submitted purely off of Plaintiff's memory" (Doc. 92) due to "SCI-Camp Hill prison officials [stealing] all of [his] property," the Court will not excuse his failure to oppose Defendants' Statement of Material Facts. (Doc. 92.)  Mr. Sloan previously made this same statement in a December 30, 2015 letter to the Court. (Doc. 90.)  To avoid any further delay in this matter, a copy of the Defendants' summary judgment materials was forwarded, by the Court, to Mr. Sloan.  The Court also *sua sponte* awarded him additional time to file his opposition materials.  (Doc. 89.)  Further, it is noted that Mr. Sloan references Defendants' summary judgment materials in his opposition brief.  *See* Doc. 92, ECF pp. 2 - 3. Accordingly, there is no basis to excuse Mr. Sloan's failure to file a response to Defendants' Statement of Material Facts.

Via the DOC's Inmate Handbook, inmates are provided with notice of the DOC's Grievance System and the requirements they must meet to properly exhaust their issue through the DOC's grievance process.  (DSMF ¶ 5.)  Consistent with the language of the grievance policy in effect at all times relevant to this action, an inmate who files "more than 5 frivolous or fabricated grievances within a 30 day period" can, at the prison's discretion, be placed on grievance restriction.  (DSMF ¶ 6.)  An inmate on grievance restriction is limited to filing no more than one grievance every fifteen working days.  (DSMF ¶ 7.)

### B.    Mr. Sloan's Grievance Efforts Related to Claims Presented in his Complaint.

Mr. Sloan submitted two grievances requesting permission to keep an extra box of legal materials in his SMU cell: Nos. 331074 and 344090.  (DSMF ¶ 8.)  On August 15, 2010, Mr. Sloan submitted grievance No. 331074 asking to maintain additional legal materials in his SMU cell.  (Doc. 40, ECF pp. 23 - 28.)  Although Mr. Sloan appealed the grievance to final review, SOIGA, dismissed it as untimely.  (*Id*., ECF p. 23; DSMF ¶ 9.)  On September 10, 2010, Mr. Sloan was placed on grievance restriction for ninety days and thus limited to filing a single grievance every fifteen working days.  (DSMF ¶ 7, ¶ 10 and ¶ 37; Doc. 40, ECF p. 19.)  As his last accepted grievance was filed on November 2, 2010, he was not eligible to file another grievance until November 24, 2010.  (Doc. 32, ECF p. 14.)  He submitted grievance 344090 on November 19, 2010.  It was rejected because he was on grievance restriction.  (*Id.*, ECF pp. 17 - 18.)  Mr. Sloan could have resubmitted this grievance between November 24, 2010 and December 9, 2010 and it would have been considered timely filed.  (DSMF ¶ 34 and ¶¶ 38 - 42.)  Mr. Sloan did not resubmit this grievance.

-5-

On October 6, 2010, Mr. Sloan submitted grievance 338188 concerning a September 18, 2010, search of his housing unit (E Block) during a power outage.[4]  (Id., ECF p. 32.)  He claimed that following the search of his cell by Defendants Flinn and Flowers his medically prescribed eye glasses were destroyed.  (*Id.*)  Mr. Sloan appealed the initial response of his grievance to Superintendent Murray who remanded the matter to Defendant Carberry.  Mr. Sloan was advised that he could resubmit an appeal to Superintendent Murray prior to filing his appeal to SOIGA.  No further appeal of this grievance was filed.  (*Id.*, ECF p. 29; DSMF ¶¶ 11 - 12.)   On February 11, 2011, Mr. Sloan filed grievance 353035 concerning the replacement of his prescription eye glasses destroyed in the September 18, 2010 cell search.  The grievance also complained of the constant illumination in his SMU cell which "causes the pain already being inflicted [due to the loss of his glasses] to be intensified."  (*Id.*, ECF p. 43; DSMF ¶¶ 13 - 14.)  In the initial response, he was advised that the security lighting in the unit would not be changed.  (*Id.*, ECF pp. 45 - 46.)  Ultimately, his grievance was dismissed at final review due to Mr. Sloan's failure to provide SOIGA with the required documentation for proper review.  (*Id.*, ECF p. 41.)

On November 9, 2010, Mr. Sloan submitted grievance 342338 concerning an October 26, 2010 event where Defendants Evans and Goss opened his cell door without following proper procedures.  He claims they did this to make an attempt on his life.  (*Id.*, ECF p. 40.)  The grievance was rejected due to Mr. Sloan being on grievance restrictions.  (*Id.*, ECF p. 39.)  However, upon review of Mr. Sloan's appeal, Superintendent Murray reactivated the grievance

---

[4] Although Mr. Sloan complains he lost additional property during the September 18, 2010 cell search, in his Complaint he only pursues his claim that Defendants Flowers and Flinn destroyed his "medically prescribed eyeglasses".  *See* Doc. 1, ¶ 7.  Thus, to the extent the grievance itself mentions other items, Mr. Sloan has limited his claim in this action to the destruction of his eye glasses.  (*Id.*)

with the direction that the Security Office investigate his allegations in accordance with the "Inmate Abuse Allegations Monitoring" policy. (*Id*., ECF p. 37.) An internal investigation of Mr. Sloan's allegations, including review of available videotape of the incident, determined his claims to be unsubstantiated. (Doc. 32, ECF pp. 39 - 41.) Superintendent Murray denied Mr. Sloan's appeal of the investigation's findings. (*Id*., ECF p. 35.) Mr. Sloan's appeal to SOIGA was dismissed due to his failure to provide SOIGA the required documentation for review. (*Id*., ECF p. 33; DSMF 16.)

Mr. Sloan submitted grievance 343811 on November 18, 2010, after SMU staff announced that they would deny SMU inmates access their stored legal property. Mr. Sloan asserts he was denied access to his legal property. (Doc. 32, ECF p. 5.) The grievance was rejected because Mr. Sloan was on grievance restriction.[5] (DSMF ¶ 19 and ¶ 37; Doc. 40, ECF p. 19.) SOIGA upheld the institution's rejection of grievance 343811. (Doc. 32, ECF p. 1; DSMF ¶ 19, ¶ 36.) Mr. Sloan had until December 10, 2010 to refile this grievance but failed to do so. (DSMF ¶¶ 36 - 38; ¶ 42; and ¶ 44.)

On December 1, 2010, Mr. Sloan filed grievance 345236 concerning multiple issues. (Doc. 40, ECF p. 51.) One of the issues raised was that Defendant Rasheed served him a seafood meal, which he is allergic to, during the feast of Eid al-Fitr. (*Id*.) Initially Defendant Rasheed told him the meal would be replaced. Mr. Sloan then spoke to Defendant Flynn and learned he would not receive a replacement tray. (*Id*.; DSMF ¶ 20.) Mr. Sloan claims he was wrongfully denied an Eid al-Fitr meal. His grievance was rejected because it violated the grievance policy as it complained of more than one issue and was untimely submitted as to

---

[5] As his last accepted grievance was filed on November 2, 2010, he was not eligible to file another grievance until November 24, 2010. (DSMF ¶ 19.)

events that occurred on October 8, 2010.  (*Id.*, ECF p. 50.)  Mr. Sloan's grievance appeal was denied.  (*Id.*, ECF p. 48.)  He did not appeal the rejection of his grievance to final review. (DSMF ¶ 21; Doc. 40, ECF pp. 48 - 50.)

On February 8, 2011, Mr. Sloan filed grievance 353696 concerning the loss of two draft lawsuits being sent out for photocopying.  He claims CO Davidson and CO Weaver, non-defendants, took his legal items.  The materials were never returned to him. (Doc. 40, ECF p. 58.)  When prison officials attempted to investigate Mr. Sloan's grievance, he refused to cooperate with the investigation.  (*Id.*, ECF p. 57.)  Superintendent Murray upheld the denial of the grievance.  (*Id.*, ECF p. 54.)  The grievance was dismissed at final review as being untimely filed.  (*Id.*, ECF p. 53; DSMF ¶¶ 21 - 23.)

Mr. Sloan did not properly appeal to final review several grievances concerning his desire for mental health treatment while housed in the SMU.  (DSMF ¶ 24.)  He filed grievance 344089 on November 21, 2010 concerning the denial of adequate mental health treatment while in the SMU.  (Doc. 32, ECF p. 11; DSMF ¶ 26.)  The grievance was rejected due to Mr. Sloan being on grievance restriction.  At the time, Mr. Sloan was ineligible to file another grievance until November 24, 2010.  (DSMF ¶ 27; Doc. 32, ECF p. 12.)  Superintendent Murray upheld the grievance rejection, as did SOIGA.  (Doc. 32, ECF p. 14 and p. 9.)  Mr. Sloan's grievance restrictions expired on December 10, 2010.  He had until December 13, 2010, to timely resubmit grievance 344089 but failed to do so.  (DSMF ¶ 43.)  Mr. Sloan filed grievance 350049 alleging the denial of a treatment workbook.  (DSMF ¶ 28.)  The grievance was denied at Initial Review (Doc. 40, ECF p. 71), and upon appeal to Superintendent Murray (*Id.*, ECF p. 40).  Mr. Sloan did not appeal this grievance to final review.  (DSMF ¶ 28.)

Mr. Sloan filed three grievances concerning the confiscation of his property and clothing after he was placed on suicide watch for engaging in hunger strikes.  (DSMF ¶¶ 29 - 30; Doc. 40, ECF p. 60.)  He filed grievance 366105 on May 19, 2011 claiming that several officers "stripped [him] of all clothing and property excluding shoes and suicide smock".  (*Id.*, ECF pp. 60 - 61.)  The grievance was denied at initial review.  (*Id.*, ECF p. 59.)  Mr. Sloan did not appeal this grievance.  (DSMF ¶ 31.)  He filed grievance 366758 on May 25, 2011 complaining of the May 6, 2011 confiscation of his property while on a hunger strike.  (Doc. 40, ECF p. 65.) His appeal was initially rejected by the Grievance Coordinator because the issues presented were being reviewed and addressed in connection with grievance 366105.  (*Id.*, ECF p. 64.) The Facility Manager upheld the rejection of the grievance.  (*Id.*, ECF p. 62; DSMF ¶ 32.)  Mr. Sloan did not file an appeal to final review.  (DSMF ¶ 30.)  The final grievance related to the confiscation of Mr. Sloan's property and clothing, grievance 367140, was filed on May 27, 2011.  (Doc. 40, ECF pp. 67 - 68.)  After being denied by Defendant Carberry at initial review, Mr. Sloan did not appeal the grievance.  (DSMF ¶ 30 and ¶ 33.)

All of Mr. Sloan's grievances that were denied because Mr. Sloan was on grievance restrictions (343811, 344090, and 344089) could have been resubmitted in a timely manner that would have allowed for their review by prison officials.  (DSMF ¶¶ 34 - 44.)

### C.   Claims Related to Mr. Sloan's SMU Confinement.

Between August 5, 2010 and June 2, 2011, Mr. Sloan was housed in the SMU at SCI-Camp Hill, a Level 5 housing unit.  (DSMF ¶¶ 58 - 59.)  The SMU is a behavioral management program to manage inmates who are disruptive and/or violent in a safe, secure and humane

manner.  (DSMF ¶ 60).  The SMU is specifically designed to provide each inmate with the opportunity to demonstrate a stable level of behavior so that he/she can be safely returned to general population or another suitable status.  (DSMF ¶ 61.)  SMU inmates are reviewed by the Unit Management Team every thirty days.  (DSMF ¶ 86.)

### (1)    Food Loaf & Alleged Denial of Meals

Mr. Sloan is allergic to fish and pinto beans.  (DSMF ¶ 51.)  SCI-Camp Hill has a "no legume, no fish" menu for Mr. Sloan because many recipes are not specific as to the type of legume served.  (DSMF ¶ 51.)  Mr. Sloan claims he was placed on "bean-filled food loaf" diet in retaliation for filing grievances against prison officials.  (DSMF ¶¶ 45 - 46.)  He claims Defendants Murray, Carberry and Ellers falsified documentation and altered his diet orders for the purpose of feeding him "bean-filled food loaf."  (DSMF ¶ 46.)  Mr. Sloan filed two grievances concerning his receipt of food loaf and whether it was nutritionally appropriate for him due to his food allergies.  (DSMF ¶ 47.)  Both grievances were denied.  (*Id.*)  When Mr. Sloan was placed on food loaf, the recipe was reviewed to ensure it complied with his dietary needs.  (DSMF ¶ 47; Doc. 34, ECF pp. 5 - 6; Doc. 40, ECF pp. 72 - 94.)  While Mr. Sloan has an allergy to pinto beans, the food loaf recipe used called for great northern beans which are not contraindicated for him.  (DSMF ¶ 52; Doc. 35, ECF p. 90.)  Mr. Sloan also filed a grievance alleging that prison officials falsified documents to justify placing him on the food loaf diet.  The grievance was deemed unsubstantiated.  (DSMF ¶ 48.)  Mr. Sloan was placed on food loaf at various times while at SCI-Camp Hill due to his own behavior, i.e. his refusal to return his food tray or holding the food aperture on his SMU cell door hostage.  (DSMF ¶ 50; Doc. 35, ECF pp. 81 - 88.)

Mr. Sloan claims staff denied serving him a meal approximately twenty times between November 10, 2010 and May 25, 2011.  (DSMF ¶ 53.)  His Cumulative Adjustment Record (DC-17X) for this period reflects when accepted (A) or refused (R) a meal.  (DSMF ¶ 54; Doc. 32, ECF p. 32, pp. 60 - 127.)  His medical record reflects that medical personnel counseled him on the possible consequences of embarking on a hunger strike each time he elected to do so.  (Doc. 34, ECF pp. 17 - 34.)

### (2)    Denial of Shaving Opportunities

Mr. Sloan claims Defendants Murray, Southers and Carberry denied him the opportunity to shave from January 1, 2011 to March 29, 2011 in retaliation for his filing of lawsuits against prison officials.  (DSMF ¶ 55.)  Mr. Sloan's DC-17X for this period reflects when shaving was not available (NA), or if he refused (R) the opportunity to shave, or was on razor restriction and thereby denied (D) possession of a razor.  (DSMF ¶ 57; Doc. 32, ECF p. 28; pp. 85 - 110.)

### (3)    Security Lighting in the SMU

The SMU is a Level 5 housing unit.  Inmates housed in a Level 5 housing unit need increased security, control and monitoring compared to general population inmates.  (DSMF ¶ 62.)  Officers assigned to the SMU are required to make security patrols 24 hours a day in a continuous fashion to ensure that all cells/areas are checked at a minimum of once every thirty minutes.  Inmates identified by medical or security staff as needing more frequent observation are observed more frequently.  Corrections Officers are instructed to report any safety/security concerns, unusual or prohibited activities of the inmates.  (DSMF ¶ 63.)

Inmates cannot control the security lights in their SMU cells.  DOC Policy 6.5.1 prohibits SMU inmates from covering or modifying the lights in their cells.  (DSMF ¶ 65; Doc. 33.)  Per policy, security lighting shall remain on at all times.  (DSMF ¶ 66.)  The SMU nighttime security lighting is not harsh or excessive.  It is generated by a 7-watt bulb and provides minimal light. (DSMF ¶¶ 67 - 68.)  Although minimal, this lighting is necessary to allow Corrections Officers to see easily into cells and to detect dangerous and improper activity, such as a fight between cellmates, suicide attempts or escapes.  (DSMF ¶ 69.)  If the evening security light was removed or turned off, it would adversely affect SMU staff and inmates.  (DSMF ¶ 70.)  SMU staff would have to use flashlights to check every cell which in turn would delay their rounds. Flashlights would not be as effective as having the security light on in the cells.  Staff unable to effectively see into the cells are exposed to possible attacks and harm.  Inmates are also endangered by the lack of a night light in the SMU cell.  (DSMF ¶ 71.)  Alternatively, if staff were required to manually turn each cell's light on and off each time they made rounds, their rounds would be prolonged and less rounds could be made.  Furthermore, it is anticipated that inmates would argue that constantly turning their lights turning on and off every 30 minutes would disrupt their sleep.  This would have an adverse effect on safety and security within the SMU.  (DSMF ¶ 70 and ¶ 72.)

Mr. Sloan claims that from August 5, 2010, through June 2, 2011, while housed in the SMU he was subjected to "sensory deprivation" due to "illumination above watt authorized by law."  (DSMF ¶ 58.)  Mr. Sloan's medical records fail to reveal any documented or substantiated connection between his confinement in SCI-Camp Hill's SMU and his allegations of insomnia, deteriorated vision, or decreased overall health due to sleep deprivation caused by the security nightlight.  (DSMF ¶ 73 and ¶ 78; Doc. 34, ECF pp. 5 - 92.)  The results of Mr.

Sloan's March 1, 2011, Opthalmologic/Optometric Examination were normal.  (DSMF ¶ 79; Doc. 34, ECF p. 37.)  On June 3, 2011, upon his transfer to SCI-Somerset, Mr. Sloan denied suffering from any physical disabilities/limitations and did not express any complaints.  (DSMF ¶ 74; Doc. 34.)  He also denied any abuse while at SCI-Camp Hill.  (DSMF ¶ 75.)

Mr. Sloan filed grievance 353035 on February 2, 2011.  (Doc. 40, ECF p. 43.)  In that grievance he complains of the constant illumination in his SMU cell.  (*Id*.)  This grievance was dismissed at final appeal because Mr. Sloan failed to provide SOIGA with the required documentation for proper review.  (*Id*., ECF p. 41.)

### D.    Mr. Sloan's Receipt of a Retaliatory Misconduct

After Mr. Sloan told Defendant Flinn that he would file a grievance concerning his failure to receive a replacement Eid al-Fitr meal as promised by Defendant Rasheed he was issued a misconduct for lying to an employee.  (DSMF ¶ 80.)  Mr. Sloan claims the misconduct was issued in retaliation for his complaints concerning the denial of his religious meal.  (Doc. 1, ¶ 13.)

Pursuant to DOC Policy ADM 801 (DC-ADM 801), titled *Inmate Discipline*, the DOC has an administrative procedure to operate a disciplinary process that provides clear notice of prohibited behavior, outlines a fundamentally fair hearing process, and establishes sanctions for violations of DOC rules and regulations.  (DSMF ¶ 81.)  DC-ADM 801 also provides a process for resolution of alleged inmate violations of the DOC rules and regulations.  The initial misconduct is heard by a Hearing Examiner.  A sanction is imposed if a rules violation is found.  An inmate may appeal the Hearing Examiner's findings to the Program Review

Committee (PRC) within fifteen days of the hearing.  If dissatisfied with the PRC's ruling, the inmate may file an appeal to the Superintendent within seven days of the PRC's decision.  The final level of review is an appeal to the DOC's Chief Hearing Examiner within seven days of the Superintendent's decision.  (DSMF ¶ 82.)

Defendant Flinn issued Mr. Sloan misconduct A77147 on September 19, 2010, for lying to an employee after Defendant Flinn learned that Mr. Sloan was requesting a replacement religious meal when he was not to have received one in the first instance. (DSMF ¶ 83; Doc. 37, ECF p. 4.)  Hearing Examiner Reisinger found Mr. Sloan guilty of the misconduct and imposed a sanction of forty-five days disciplinary custody. Mr. Sloan did not appeal this finding of guilt.  (DSMF ¶ 85; Doc. 37, ECF p. 3.)


## IV.    Discussion

### A.    Failure to Exhaust Available Administrative Remedies

Defendants seek summary judgement as to a majority of Mr. Sloan's claims based on his purported failure to exhaust his available administrative remedies are required by the Prison Litigation Reform Act (PLRA).  The PLRA, as amended, 42 U.S.C. § 1997e, requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court.  The PLRA specifically provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A prisoner must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting,

regardless of the nature of the claim or of the relief sought.  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 1825 n. 6, 149 L.Ed.2d 958 (2001).  "[I]t is beyond the power... of any... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000).  Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant.  *Small v. Camden Cnty*, 728 F.3d 265, 268 (3d Cir. 2013).  Additionally, "[e]xhaustion is a question of law to be determined by a judge, even if that determination requires resolution of disputed facts."  *Id*. at 269.  There is no right to have a jury decide the issue of exhaustion.  *Id*. at 271.

The PLRA also mandates "proper exhaustion" of the agency's deadlines and other procedural rules pertaining to its grievance/administrative remedy process. *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006).  The exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal."  *Id*., 548 U.S. at 83, 126 S.Ct. at 2382; *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008); *Jetter v. Beard*, 183 F. App'x 178 (3d Cir. 2006).  The only exception to the PLRA's exhaustion requirement is "built-in".  As confirmed by the United States Supreme Court in *Ross v. Blake*, No. 15-339, 2016 WL 3128839, *3 (U.S. Jun. 6, 2016):  "A prisoner need not exhaust remedies if they are not 'available'."  (*Id*.)  "Available" means "capable of use; at hand."  *Small*, 728 F.3d 271 (quoting *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002)).  "Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes."  (*Id*.)  Likewise, if the actions of prison officials directly cause the inmate's

procedural default of a grievance, the inmate will not be held to strict compliance with the PLRA's exhaustion requirement.  *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

It is undisputed that the DOC has a grievance policy as well as a disciplinary appeal process.  (DSMF ¶ 1 and ¶¶ 81 - 82.)  The various time frames and appeal procedures respective to each process are uncontested.  Based upon the undisputed evidence in the record, it is clear that Mr. Sloan failed to exhaust his administrative remedies as to the majority of the claims raised in the Complaint either due to his failure to appeal the denial/rejection of his grievances/misconduct or by failing to properly appeal the grievance in accordance with the parameters of the DOC's grievance policy.  Specifically, Mr. Sloan failed to exhaust his available administrative remedies as to the following claims/issues and thus is prohibited from pursuing them in this action:  (1) interference with access to the court due to the denial of permission to have extra legal materials in his cell (grievances 331074 and 344090); (2) the alleged "attempt" on his life by Defendants Evans and Goss (grievance 342338); (3) interference with his access to the court by Defendants Shellenberger and Goss due to his lack of access to his stored legal materials (grievance 343811); (4) all claims against Defendant Kalsky related to denying Mr. Sloan mental health therapy (individual and/or group) while in the SMU (grievance 344089); (5) denial of a religious meal by Defendant Rasheed (grievance 345236); (6) receipt of a retaliatory misconduct from Defendant Flinn (misconduct A77147); (7) interference with his access to the courts due to the loss of a draft lawsuit by two non-defendants (grievance 353696); (8) all claims against Defendants Murray, Southers, Carberry, and Gardner for depriving him of clothing and personal property during his hunger strikes (grievances 366105; 366758 and 367140); and (9) medical complaints related to his

exposure to "constant illumination above watts authorized by law" in his SMU cell (grievance 353035).

With that said, the Court is mindful that Mr. Sloan claims prison officials interfered with his ability to utilize the administrative remedy process, thus making it "unavailable" and excusing his failure to exhaust grievances 338188 (the September 18, 2010 destruction of his eye glasses) and 353696 (loss of draft lawsuits).  He also argues that while on "grievance restriction," the administrative remedy process was "unavailable" to him with respect to grievances 343811 (denial of access to his SMU legal property), 344090 (denial of permission to have extra box of legal materials in his cell) and 344089 (denial of mental health treatment while in the SMU).  (Doc. 92, Br. in Opp'n Mot. Summ. J.)  After reviewing the record as to each disputed grievance, the Court concludes that with the exception of grievance 338188, Mr. Sloan failed to properly exhaust his available administrative remedies as to grievances 353696, 343811, 344090 and 344089.

First, Mr. Sloan argues he fully exhausted, to the extent possible, grievance 338188 related to the destruction of his prescription eye glasses.  (Doc. 1, ¶ 7; Doc. 92, ECF pp. 2 - 3; Doc. 40, ECF p. 32.)  When Mr. Sloan appealed the initial grievance response to Superintendent Murray, the matter was remanded back to Defendant Carberry with the direction that he provide Mr. Sloan "with additional information concerning the property that was confiscated during the September 18, 2010 cell search."[6]  (Doc. 40, ECF p. 29.)  Superintendent Murray advised Mr. Sloan that he "may appeal this matter to [him] one more

---

[6]  The loss of property other than Mr. Sloan's eye glasses stemming from the September 18, 2010 search is not alleged as a claim for relief against Defendants Flinn and/or Flowers.  *See* Doc. 1, ¶ 7.

time before filing [an] appeal with the Secretary's Office of Grievances and Appeals" upon receipt of the additional information to be provided by Defendant Carberry. Mr. Sloan argues that the administrative remedy process was rendered "unavailable" when Defendant Carberry failed to provide him with a supplemental response necessary for him to move forward with his appeal. (Doc. 92, ECF p. 3.) Because an inmate's failure to exhaust under the PLRA is an affirmative defense, it must be plead and proven by defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Here, Defendants' summary judgment record does not contain a copy of Mr. Carberry's remand response to grievance 338188. Additionally, Defendants did not file a reply brief addressing this issue, thus there is no evidence in the record to suggest that Defendant Carberry ever provided Mr. Sloan with an updated response that would have allowed Mr. Sloan to continue with his appeal of this grievance. In light of the above, the Court will deny Defendants' motion for summary judgment concerning Defendants' Flinn and Flowers destruction of Mr. Sloan's prescription eyeglasses on the basis of his failure to exhaust his administrative remedies as to grievance 338188.

With respect to grievance 353696, Mr. Sloan argues that Defendants have produced inadmissible hearsay evidence to demonstrate his failure to exhaust this grievance. He suggests Dorina Varner's Final Appeal Decision, in which she notes that the appeal was untimely based on her representation of the date the envelope was postmarked, is inadmissable hearsay. (Doc. 40, ECF p. 53.) He claims Defendants should have produced the envelope in which he mailed his appeal to final review to definitively demonstrate whether or not it was untimely submitted. *See* Doc. 92, ECF p. 5. The Court disagrees. Here, Defendants produced the signed declaration of Ms. Alvord. She is the Assistant to the Superintendent at SCI-Camp Hill and the institution's Grievance Coordinator. She is also the

custodian of records at the institution.  In her declaration she, affirms under penalty of perjury and in accordance with 28 U.S.C. § 1746, that the facts contained within are true and correct based on her personal knowledge or from her review of records routinely maintained during the operations of the Department of Corrections.  (Doc. 40.)  Copies of the grievances submitted in connection with Ms. Alford's declaration, including those related to grievance 353696 (*Id*., ECF pp. 53 - 58), can be considered by the Court as admissible hearsay pursuant to Fed. R. Evid. 803(6), the business records exception.  As these documents would be admissible at trial under Rule 803(6), they are properly before the Court on summary judgment. *McKeever v. Twp. of Washington*, 223 F.3d 220, 223 (3d Cir. 2002).  Accordingly, the submission of the DOC's grievance packet concerning grievance 353696, and other grievances attached to her declaration, fall within the business records exception to the hearsay rule.  Furthermore, as "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).  Here Mr. Sloan's allegations that the Chief Grievance Officer lied in her report that his envelope was not post-marked prior to April 18, 2011 is made without evidentiary support and may be disregarded. *See Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).  "Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002).  Mr. Sloan has failed to present any evidence to contradict or call into doubt Defendants' evidence or otherwise demonstrate that prison officials impeded his ability to properly exhaust his grievance challenging the loss of his draft lawsuit.  Defendants, who have the burden of proving Mr. Sloan's failure to properly exhaust his administrative

remedies, have effectively done so.  Alternatively, and equally dispositive of any claim arising

from this grievance is the fact that Mr. Sloan names CO Davidson and CO Weaver as

responsible for the loss of his draft lawsuits.  (Doc. 40, ECF p. 57.)  Neither CO Davidson or

CO Weaver are defendants in this action.  Thus, he fails to allege the personal involvement

by any of the named Defendants in the confiscation of his draft lawsuits.  *See Rode v.*

*Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988).  Therefore, even if properly exhausted, any

claim based on grievance 353696 is subject to dismissal for failure to state a claim upon which

relief can be granted.

Mr. Sloan also challenges the Defendants' assertion that he failed to appeal the

Hearing Examiner's findings with respect to his receipt of a retaliatory misconduct (A77147).

(Doc. 92, ECF p. 4.) He claims Defendants' failed to provide him with a response to his appeal

and thus prevented him from exhausting his misconduct appeal.  Defendants submit the

declaration of Attorney Robin Lewis, Chief Hearing Examiner, who explained the misconduct

appeal process and affirms that Mr. Sloan did not appeal the Hearing Examiner's findings as

to misconduct A77147.  (Doc. 37; DSMF ¶ 85.)  Again, Mr. Sloan offers only argument, not

evidence, in support of his assertion.  The Court, however, notes that aside from the

declaration of Attorney Robin M. Lewis, a review of the uncontested record demonstrates that

Mr. Sloan never raised the lack of response to his misconduct appeal at his next scheduled

periodic review before the PRC, the same body assigned to provide him a response to his

misconduct appeal.[7]  *See* Doc. 35, ECF p. 57.  Also, Mr. Sloan does not provide any evidence

---

[7] Unlike most other PRC reports, the October 13, 2010 report (the first PRC review following the misconduct hearing), does not indicate Mr. Sloan's failure to participate in the review.  *Compare Id.*, ECF p. 57 and ECF pp. 60, 63, 66 and 69.

to suggest that he grieved or otherwise raised the lack of response to his misconduct appeal to the PRC to prison officials prior to filing the instant lawsuit.  Mr. Sloan has not demonstrated that his administrative remedies were unavailable to him for the purpose of appealing the Hearing Examiner's guilty verdict as to misconduct A77147.  In light of the record before the Court, and without more than Mr. Sloan's unsupported statements that he appealed the matter to the PRC, Defendants have carried their burden to adequately demonstrate his failure to properly exhaust his available administrative remedies to challenge the findings of the Hearing Examiner's decision related to misconduct A77147.

Next, Mr. Sloan argues that with respect to grievances 343811 (Doc. 32, ECF p. 5), 344090 (*Id*., ECF p. 17) and 344089 (*Id*., ECF p. 11) he was prevented from properly exhausting these grievances because he was on grievance restriction and thus the administrative process was "unavailable" to him. (Doc. 92, ECF pp. 3 - 4.)  The properly supported record in this matter reveals that after filing five or more frivolous grievances within a thirty day period, Mr. Sloan was placed on grievance restrictions on September 10, 2010 for a ninety day period (December 9, 2010).  He was only permitted to file one grievance every fifteen working days while on grievance restriction.  On November 2, 2010, prison officials accepted a grievance from him.  Thus, he had to wait until November 24, 2010 to file his next grievance.  The three above referenced grievances were all filed prior to that date and thus were properly rejected without prejudice.  As previously noted, an inmate's failure to exhaust will only be excused under the limited circumstance where he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate.  Here, contrary to Mr. Sloan's contention, even though on grievance restriction until December 9, 2010, he could have refiled grievances 343811, 344090 and 344089 in accordance with the

DOC's grievance system.  Mr. Sloan could have filed one grievance between November 24 and December 9, 2010.  He had until December 8, 2010 to refile grievance 344090.  (DSMF ¶ 37 and ¶ 41.)   Accordingly, Mr. Sloan could have refiled grievance 344090 between November 24 and December 9, 2010, and then refiled his other grievances after December 10, 2010 when his grievance restriction expired.  Mr. Sloan has failed to dispute these facts.  His argument that he must pick and chose which grievances to pursue while on grievance restriction, at least with respect to the three grievances in question, is unhelpful to his argument that he could not properly exhaust these grievances simply because he was on grievance restriction.  Accordingly, Mr. Sloan has failed to demonstrate that the grievance system was unavailable to him for the purpose of pursuing grievances 343811, 344090 or 344089.

Based upon the undisputed evidence in the record, Defendants have demonstrated that Mr. Sloan failed to exhaust his administrative remedies as to claims and grievances previously identified.  However, the Court finds that due to the dispute of fact as to whether Defendant Carberry ever issued the requisite remanded response to grievance 338188 necessary for Mr. Sloan to continue his appeal of this grievance (i.e. his claim that Defendant Flinn and Flower's destroyed his prescription eye glasses) this claim will not be dismissed on the basis of his failure to exhaust his administrative remedies.

**B.** **Mr. Sloan's Retaliation Claims Concerning his Receipt of Food Loaf and the Denial of Shaving Opportunities.**

"Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).  To assert a First Amendment retaliation claim a plaintiff must show that "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011).  An adverse action is conduct that is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id.* (internal quotation marks and quoted case omitted).  To establish the causation prong of a constitutional retaliation claim, a plaintiff must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (citation and quotation marks omitted).  Even in the absence of that proof, a plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).  However, conclusory allegations of retaliation without any additional evidence are insufficient to plausibly demonstrate that a genuine issue of material fact exists.  See Fed. R. Civ. P. 56(e)(2).  Once a prisoner establishes a *prima facie* case, the burden shifts to the defendant to show by a preponderance of the evidence that the same disciplinary or adverse action would have been taken for reasons reasonably related to a legitimate penological interest even in the absence of protected activity.  *Rauser v. Horn,* 241 F.3d 330, 334 (3d Cir. 2001).

Mr. Sloan claims Defendants retaliated against him for lodging complaints concerning alleged constitutional violations at the prison.  *See* Doc. 1, ¶¶ 16 - 19.  He claims Defendants improperly placed him on a food loaf diet ten times between November 10, 2010 and May 25, 2011; denied him meals twenty times during this same period; and denied him the opportunity to shave between January 1, 2011 and March 29, 2011.  *See* Doc. 1, ¶16 and ¶ 19.  Each claim will be addressed in turn.

Defendants contend that Mr. Sloan was placed on food loaf due to his own behavioral choices.  Specifically, the evidence of record demonstrates that Mr. Sloan was given food loaf on occasions after he refused to return his food tray or placed his arm in the food aperture on his SMU cell door and refused to remove it. (DSMF ¶ 50; Doc. 35, ECF pp. 81 - 88.)  To the extent he alleges he was denied twenty meals at unspecified times by Defendants between November 10, 2010 and May 25, 2011, Defendants have provided copies of Mr. Sloan's DC-17x from this same time period.  The DC-17X reports reflect when Mr. Sloan accepted or rejected his daily meals.  Mr. Sloan fails to provide any evidence to dispute these records or to suggest their unreliability.  As Defendants note, on those few occasions Mr. Sloan did not receive a meal, it was because he elected to refuse it.  (SMF ¶ 54; Doc. 32, ECF pp. 42 - 127.)  Mr. Sloan does not present evidence to contradict or call into question these records.  Moreover, even assuming that prison officials withheld twenty meals during this six month period, Mr. Sloan does not provide any evidence to suggest that the food loaf or the other meals he did was offered were nutritionally inadequate to sustain him.  To the extent Mr. Sloan argues to have suffered any ailment or weight loss due to the lack of nutrition, he fails to demonstrate the injury was a result of Defendants' withholding of twenty meals over a six month period rather than his own actions of electing to participate in hunger strikes.  In sum,

because Mr. Sloan has failed to establish a prima facie case of retaliation as to his placement on food loaf, or the denial of twenty meals, Defendants are entitled to summary judgment on these claims.

Next, Mr. Sloan alleges that Defendants Murray, Southers and Carberry denied him the opportunity to shave from January 1, 2011 through March 29, 2011, in retaliation for complaints he filed against prison officials. (Doc. 1, ¶ 19.) The record before the Court does not support Mr. Sloan's assertion. The uncontested DC-17X records, which are documented contemporaneously with the events recorded, demonstrate each time Mr. Sloan was offered the opportunity to shave and whether he refused or accepted a razor. (Doc. 32, ECF pp. 42 - 127.) The DC-17X also reveals when Mr. Sloan was not offered the opportunity to shave because he was on "razor restriction" and thereby prohibited from possessing a razor. (SMF 56 - 57.) Clearly, the record before the Court demonstrates that Mr. Sloan was offered the opportunity to shave multiple times between January 1, 2011 and March 29, 2011, but often elected not shave. While there are a instances where Mr. Sloan was on razor restriction, and thus not permitted to possess a razor, again Defendants argue the restrictions were imposed due to his behavior. A review of Mr. Sloan's Cumulative Adjustment Record demonstrates his receipt of a misconduct and his participation in a hunger strike when placed on razor restriction. Even so, there is no evidence in the record to indicate Mr. Sloan was not given the opportunity to shave at least every ten days, or more frequently. There is no evidence that Defendants prohibited him from shaving between January 1, 2011 and March 29, 2011 for any reason other than his own personal safety. Applying the retaliation standard to the record before the Court, Mr. Sloan has not demonstrated a causal link between his loss of shaving opportunities and his complaints concerning staff.

**C.   Mr. Sloan's Eighth Amendment Claim Concerning his Receipt of "Bean Filled" Food Loaf.**

Mr. Sloan alleges Defendants violated his Eighth Amendment rights by intentionally feeding him "bean filled" food loaf knowing he was allergic to beans.

The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials.  U.S. Const. amend. VIII; *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).   However, not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights.  *Id*. at 832, 114 S.Ct. at 1976.  The Eighth Amendment requires prison officials "to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care ...."  *Id*. (internal citations omitted).   To sufficiently allege an Eighth Amendment conditions of confinement claim, a plaintiff must establish that: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the defendant must have a sufficiently culpable state of mind, i.e. a state of mind that is deliberately indifferent to the inmate's health of safety.  *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-303, 111 S.Ct. 2321, 2323-2326, 115 L.Ed.2d 271 (1991)).   "It is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  With respect to food, prisoners are entitled to a nutritionally adequate diet.  *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980).  The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an

immediate danger to the health and well being of the inmates who consume it." *Id.*,  639 F.2d at 571.

Here, it is clear from the facts of the record that the Defendants were not deliberately indifferent to Mr. Sloan's food allergies when placing him on a food loaf diet. The undisputed facts show that Defendants were aware of Mr. Sloan's allergies to pinto beans.  (Doc. 35, ECF pp. 81 - 88.)  Prior to serving him food loaf, prison officials verified that its ingredients were safe for him to consume.  (*Id.*, ECF pp. 89 - 90.)  Mr. Sloan fails to submit any evidence that the food loaf he was served contained pinto beans or other ingredients he was allergic to or to which he had an allergic reaction.  Nothing in the record supports a finding that Defendants were deliberately indifferent to Mr. Sloan's pinto bean allergy when serving him food loaf.  As such, Defendants' motion for summary judgment on Mr. Sloan's Eighth Amendment claim that Defendants knowingly fed him "bean filled" food loaf is granted.

### D. Destruction of Prescription Eye Glasses by Defendants Flinn and Flowers.[8]

Mr. Sloan alleges that on September 18, 2010, Defendants Flinn and Flowers searched his cell and "destroyed plaintiff's medically prescribed glasses."  (Doc. 1, ¶ 7; *see also* Doc. 8, ECF p. 32, Grievance 338188.)

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

---

[8]   The surviving claim concerning Mr. Sloan's prescription eye glasses is limited to their confiscation by Defendants Flowers and Flinn.  As previously noted, grievance 353035 concerning the delay in Mr. Sloan's receipt of replacement eyeglasses was dismissed by SOIGA due to his failure to provide the required documents.  Accordingly, Mr. Sloan may not bring an Eighth Amendment claim related to his delay in receipt of a replacement pair by prison officials or medical staff.

XI; *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981). Negligent acts of state officials causing unintentional loss of property do not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Likewise, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Here, Mr. Sloan does not assert in the Complaint whether the destruction of his prescription eye glasses was intentional or malicious. If the destruction of his glasses was unintentional, or due to carelessness or negligence, he fails to state a cognizable Due Process Claim. *Daniels*, 474 U.S. at 328, 106 U.S. at 663. Alternatively, if Defendants Flowers' and Flinn's intentional actions led to the permanent loss of his eyeglasses, Mr. Sloan fails to allege that no post-deprivation remedy was available to address this loss. The DOC's prison grievance program and state-law conversion actions are adequate post-deprivation remedies for addressing a Pennsylvania prisoner's loss of property. *See Tillman v. Lebanon Cnty Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) ("In sum, the plaintiff had an adequate postdeprivation remedy in the grievance program.); *see also Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x. 158, 160 (3d Cir. 2014) ("[A] common law action for conversion, filed in state court pursuant to 42 PA. CONS. STAT. ANN. § 8522(a), (b)(3), also is an adequate post-deprivation remedy.")

Here, Mr. Sloan did utilize the DOC's grievance system concerning the destruction of his glasses, and his efforts to obtain a replacement pair from the medical department. Mr.

Sloan failed to property follow the DOC's procedural rules when pursuing the replacement of his glasses.  That does not make the administrative remedy inadequate.  Moreover, as a state inmate, Mr. Sloan still had an meaningful post-deprivation remedy available to him, a common law action for conversion.  Accordingly, the existence of this remedy and its availability to Mr. Sloan causes his due process claims to fail as a matter of law.

### E.    Verbal Harassment

Mr. Sloan claims he was subjected to verbal harassment by Defendants Carberry, Evans, Goss and Ellenberger, fails to state a claim for which relief can be granted.  (Doc. 1, ¶ 9.)  "Verbal harassment of a prisoner, without more, does not violate the Eighth Amendment."  *Brown v. Deparolos*, 492 F. App'x 211, 215 (3d Cir. 2012); *Mimms v. U.N.I.C.O.R.*, 386 F. App'x 32, 35 (3d Cir. 2010).  Accordingly, Mr. Sloan's claims of verbal abuse and harassment do not state a viable claim under 42 U.S.C. § 1983.

To the extent Mr. Sloan alleges Defendants called him a "snitch," he potentially asserts an "Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate."  *Tabb v. Hannah*, 2012 WL 3113856, at *6 (M.D. Pa. July 30, 2012).  To satisfy the objective element of such a claim, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. *Wallace v. Doe*, 512 F. App'x 141, 144 (3d Cir. 2013).  There is no evidence in the record that Mr. Sloan was exposed to a substantial risk of serious harm because Defendants' labeled him a snitch.  Mr. Sloan admits he was single celled in the SMU at SCI-Camp Hill and then transferred to another facility.  He admits that he did not suffer any abuse while at SCI-Camp

-29-

Hill.  Accordingly, Defendants are entitled to summary judgment on Mr. Sloan's claims of verbal harassment.

### F.    Conspiracy

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir.1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003).  "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa.1992).  A plaintiff's allegation of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.*

Here, Mr. Sloan claims Defendants "conspired" to place him on food loaf and to confiscate his personal property while he was on suicide watch due to his election to participate in a hunger strike.  (Doc. 1, ¶ 16 and ¶ 18.)  The record, however, is devoid of any evidence of any agreement between the Defendants to deprive Mr. Sloan of any constitutional right.   Mr. Sloan fails to offer more than speculative and conclusory statements in his Complaint that Defendants conspired against him to place him on food loaf or confiscate his

personal property while on suicide watch.  On the contrary, the evidence in the record reveals that Mr. Sloan's refusal to return his dinner tray or remove his arm from the aperture in his cell door led to his placement no food loaf.  Likewise, Mr. Sloan's election to embark on hunger strikes and refuse medical monitoring led to his placement on suicide watch, which included the precautionary removal of his clothing and personal property from his cell.

Accordingly, Defendants are entitled to summary judgment as to Mr. Sloan's claims of conspiracy.

### G.   Bureau of Health Care Services

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 687–88, 121 L.Ed.2d 605 (1993); *Lombardo v. Pennsylvania*, 540 F.3d 190, 194 (3d Cir. 2008).   By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued.  *See* 42 PA. CONST. STAT. ANN. § 8521(b); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir.1981).   Likewise, suits against state officials in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *See Hafer v. Melo*, 502 U.S. 21, 25–27, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 - 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). That same immunity applies to a "subordinate agency" like the Bureau of Health Services and dismissal is appropriate under this theory.   *See Dennison v. Pa. Dep't. of Corr.*, 268 F. Supp.2d 387, 398 (M.D. Pa. 2003).  The Eleventh Amendment, however, does not bar claims

for prospective injunctive relief brought against state officials in their official capacities.  *See Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011).

Furthermore, to successfully state a § 1983 claim, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States.  *Rehberg v. Paulk*, ___ U.S. ___, ___, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012); *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). It is well settled that a prison or correctional facility is an arm of the state and thus is not a "person" subject to suit under § 1983.  *See Will,* 491 U.S. at 71, 109 S.Ct. at 2312; *Pettaway v. SCI-Albion*, 487 F. App'x 766, 768 (3d Cir. 2012); *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845 - 46 (3d Cir. 2011)(citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (per curiam)).  The Bureau of Health Care Services, is a department within the DOC, thus is also not considered a "person" amenable to suit under § 1983.

Based on the above-cited case law, Mr. Sloan's claims against the Bureau of Health Care Services will be dismissed because it is shielded by the Commonwealth's Eleventh Amendment immunity and because it is not a "person" subject to suit within the meaning of § 1983.

### H.     Defendant McGinnis

In two places within his Complaint, Mr. Sloan lists the following individuals/entities as Defendants:  Corrections Officer (CO) Goss, CO Evans, CO Duncan, CO Shellenberger; CO Ellenberger; Lieutenant (Lt.) Flowers; Lt. Flinn; Unit Manager Chris Chambers; Unit Manager

Rodney Carberry; Psych Kalsky; Superintendent Murray; the Pennsylvania Department of Corrections (DOC) Bureau of Healthcare Services. *See* Doc. 1, ECF pp. 2 - 3. This Court ordered service of the Complaint by the U.S. Marshal Service and the docket reflects that these original Defendants were served. *See* Docs. 7 and 8. While Nurse Sheila McGinnis is named once as a Defendant within the body of the Complaint,[9] Mr. Sloan failed to list her name in the caption or otherwise name her as a Defendant anywhere else in his nine page single spaced handwritten Complaint. *See* Doc. 1, ¶ 20. Thus, the Clerk of Courts did not list Nurse McGinnis as a party on the docket and she has yet to be properly served.

*Pro se* parties are accorded substantial deference in federal court, and their pleadings are construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). They are not, however, free to ignore the Federal Rules of Civil Procedure. Although there is no heightened pleading standard in § 1983 cases,[10] a § 1983 complaint must bear some relation to the rules. Fed. R. Civ. P. 10(a) requires that the title in a complaint shall contain the names of all of the parties. In other, later pleadings, "it is sufficient to state the name of the first party on each side with an appropriate indication of other parties." Fed. R. Civ. P. 10(a). Here, as Defendants note, Nurse McGinnis was not named as a Defendant in the caption in accordance with Rule 10(a). The purpose of this rule is to ensure that defendants are properly identified and are adequately on notice of the claims against them,

---

[9] "Between the approximate time period of Oct. 1, 2010 and April 30, 2011 defendant Nurse Sheila McGinnis (McGinnis) denied Plaintiff medical treatment for non-medical reasons with the approval of Murray, Taggart, Doe 3 and other prison officials though it was known such should not be done and it should be provided." (Doc. 1, ¶ 20.)

[10] *See Leatherman v. Tarrant Cnty. Narcotics Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The United States Supreme Court rejected a heightened pleading standard, noting that a § 1983 complaint need only comply "with the liberal system of 'notice pleading' set up by the Federal Rules." *Id.* at 168, 113 S.Ct. at 1163.

and that they are able to respond to the claims and allegations in a clear and orderly manner. Conformity with these rules is essential to the efficient administration of justice in the federal courts.  With that said, Mr. Sloan is proceeding *pro se*.  Accordingly, the Court will not dismiss Nurse McGinnis as a defendant in this action based on his failure to name her in the caption of his Complaint because she is identified within the body of the Complaint as a defendant. As such, the Clerk of Court will be directed to add her as a Defendant on the docket.

Next, the Court examines the claim lodged against Nurse McGinnis.  It is clear that Mr. Sloan's sole paragraph concerning Nurse McGinnis falls woefully short of the requirements of Fed. R. Civ. P. 8.[11]  In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official acts with deliberate indifference to an inmate's serious medical needs when she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).  While Mr. Sloan alleges Nurse McGinnis denied him necessary medical care for non-medical reasons, he does not specify when she denied him necessary medical care, what serious medical need was ignored, what harm was suffered as a consequence of her actions, or why be believes her treatment decisions were based on non-medical reasons.  Thus, Mr. Sloan will be granted the opportunity to file an

---

[11]  Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief".

amended complaint, *strictly as to his claims against Nurse McGinnis and only those that occurred prior to his filing of this action*.[12]   Failure to file an amended complaint will result in the dismissal of Nurse McGinnis from this action.[13]   The Court will not direct service of the Complaint on Nurse McGinnis based on Mr. Sloan's failure to state a claim for relief against her. Upon receipt of Mr. Sloan's amended complaint, the Court will screen it pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A and determine whether it should be served.

Mr. Sloan is cautioned that if he decides to file an amended complaint with respect to his claims against Nurse McGinnis, he is advised that it must contain the same docket number as the instant action and should be labeled "Amended Complaint."  In addition, the "amended complaint must be complete in all respects.[14]  It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed."  *Young v.*

---

[12]  Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *See also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).

[13]  It is noted that on September 24, 2013, the Court issued a Case Management Order calling for the close of discovery by March 17, 2014, and the filing of dispositive motions by April 17, 2014. (Doc. 19.) While the Court extended the dispositive motions deadline, the discovery deadline was not altered.  Further, there nothing in the record to suggest defense counsel ever refused to respond to discovery meant for Nurse McGinnis.  Thus, as it stands, the discovery period remains closed.

[14]  Mr. Sloan, however, shall not re-file any claims disposed of in this memorandum and accompanying order in his amended complaint.  Specifically, Mr. Sloan shall not include claims related to the following: (1) his denial of extra legal materials in his SMU cell; (2) the alleged "attempt" on his life; (3) denial of access to his legal materials while housed in the SMU; (4) denial of mental health therapy; (5) denial of an Eid al-Fitr meal; (6) his alleged receipt of a retaliatory misconduct (A77147); (7) the loss of two draft lawsuits by two non-defendants; (8) the denial of personal property and clothing per grievances 366105, 366758 and 367140; (9) issues concerning the lighting in his SMU cell; (10) the retaliatory denial of shaving opportunities; (11) retaliatory placement on a food loaf diet; (12) Eighth Amendment claim related to his receipt of "bean filled" food loaf; (13) any due process violation concerning destruction of prescription eye glasses; (14) claims of verbal harassment; (15) his conspiracy claim; and (16) any claims against the Bureau of Health Care Services.

-35-

*Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  Mr. Sloan is advised that any amended complaint he may file supersedes the original complaint and must be "retyped or reprinted so that it will be complete in itself including exhibits."  M.D. Pa. LR 15.1.  Mr. Sloan is also advised that his amended complaint must be concise and direct.  *See* Fed. R. Civ. P. 8(d).  Each allegation must be set forth in an individually numbered paragraphs in short, concise and simple statements.  *Id.*  As noted above, Mr. Sloan should provide facts supportive of his basic claim against Nurse McGinnis.  Mr. Sloan must also specify the relief he seeks with regard to each claim.  Finally, Mr. Sloan is also cautioned that illegible submissions will be returned to him without consideration.

An appropriate order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: August 11, 2016**